UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH JEROME PACKNETT,

Plaintiff,

v.

R. WINGO, et al.,

Defendants.

Case No. 09-cv-00327-YGR (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING OTHER PENDING MOTIONS**

This is a reopened *pro se* civil rights action filed by Plaintiff Kenneth Jerome Packnett, a state prisoner, pursuant to 42 U.S.C. § 1983, alleging constitutional violations and state law claims relating to his incoming legal mail and stemming from his incarceration at San Quentin State Prison ("SQSP") in 2007 and 2008.[1]  Plaintiff seeks monetary and punitive damages.  He originally named the following SQSP prison officials:  M. Cramer, R. Wingo, R. L. Ayers, T. Amrhein-Conama, D. Sung, S. Gonzales, and N. Grannis.

The following summary of the allegations in the original complaint is taken from the Court's September 29, 2010 Order:

> According to the complaint, Plaintiff was involved in several lawsuits when he came into the custody of SQSP in March 2006. (Compl. 7.)  Plaintiff's allegations with respect to SQSP officials' wrongful handling of his legal mail are as follows: (1) In January 2007, two pieces of incoming mail, one from the law offices of Bailey, Perrin, & Bailey, and one from the Watts Law Firm, were inappropriately opened and delayed during January 2007, (*id.* at 9-10); (2) in February 2007, two pieces of legal mail were opened outside of his presence, (*id.* at 11); (3) in March 2007, another piece of mail from Bailey, Perrin, & Bailey was opened outside of his presence and delayed twenty days, (*id.* at 14); (4) in July 2007, mail from Bailey, Perrin, & Bailey was delayed for over a month and opened outside of his presence, (*id.* at 16); (5) in October 2007, mail from Bailey, Perrin, & Bailey was opened and delayed, (*id.* at 18); and (6) in January 2008, mail from the Watts Law Firm was opened and a settlement check was removed, (*id.* at 20).  Plaintiff alleges that the responses [to] the grievances he filed in connection with

---

[1] On March 6, 2012, the Ninth Circuit affirmed in part, reversed in part, and remanded certain claims after reviewing this Court's September 29, 2010 Order granting Defendants' motion to dismiss.  Dkt. 65.  The Ninth Circuit issued its mandate on March 29, 2012.  Dkt. 67.  This matter was reopened and then reassigned to the undersigned judge.  Dkt. 66.

United States District Court
Northern District of California

these legal mail incidences had inadequate documentation as to the reasons why his mail was opened and who opened the correspondence in error. (*Id.* at 26, 28, 29, & 31-32.)

Plaintiff claims that his First Amendment rights were violated when Defendants wrongfully opened and delayed his legal mail, and that their actions did not advance any legitimate state interest and created a "chilling effect" on his First Amendment rights. (Compl. at 28.)

Dkt. 55 at 2.

After this case was reopened, Plaintiff moved for leave to file an amended complaint and submitted a proposed amended complaint. Dkt. 72. Plaintiff's amended complaint named three additional Defendants—V. Dasalla, Mederious and Bluitt ("SQSP mailroom staff Defendants")— and reasserted the First Amendment delay-of-mail and retaliation claims that he asserted against the original seven served Defendants. Dkt. 80. Similar to his claims against the original Defendants, Plaintiff alleged that Defendants Dasalla, Mederious and Bluitt inappropriately handled his legal mail. *Id.* at 31, 36-38. The original Defendants filed a non-opposition to Plaintiff's motion for leave to file an amended complaint. Dkt. 73. Thereafter, the Court granted Plaintiff leave to file the amended complaint, and the original Defendants waived their right to reply to the amended complaint. Dkts. 79, 81.

On March 12, 2014, the Court screened Plaintiff's amended complaint (the operative complaint in this action) under 28 U.S.C. § 1915A and allowed it to proceed on claims of First Amendment delay-of-mail and retaliation, as well as several state law claims against the named Defendants, including the three new Defendants. Dkt. 82. The Court found that Plaintiff's allegations that Defendants opened his confidential legal mail outside of his presence and without his permission and that they did so with retaliation motives on several occasions in 2007 and 2008 stated cognizable First Amendment delay-of-mail and retaliation claims. *Id.* at 3-5. The Court also found cognizable First Amendment claims based on Plaintiff's allegations that Defendants Sung and Amrhein-Conama retaliated against him for filing grievances by searching his cell in January 2008 and confiscating his television. *Id.* at 4. The Court also exercised supplemental jurisdiction over Plaintiff's state law claims. *Id.* at 5. The Court issued a briefing schedule for

Defendants to file a motion for summary judgment or other dispositive motion.[2]

Pursuant to that briefing schedule, and after being granted extensions of time to do so, Defendants filed the instant motion for summary judgment. Dkt. 108. At the time the motion was filed, Defendants Bluitt and Mederious had not yet been served. Since then, both have been served. Defendants Bluitt and Mederious have each filed a Notice of Joinder, which will be construed as a motion to join the other Defendants' motion for summary judgment. Dkts. 138, 140. Defendants Bluitt and Mederious's motions are GRANTED, and the joinders are accepted. *Id.*

Defendants' motion for summary judgment is based on the following grounds: (1) that Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to his claim that Defendants Sung and Amrhein-Conama retaliated against him by searching his cell and confiscating his television; and (2) there are no genuine issues of material fact in dispute because the indisputable evidence shows: (a) Plaintiff's rights under the First Amendment were not violated by the mishandling of his legal mail, (b) Defendants did not retaliate against him, and (c) Plaintiff fails to raise a material issue of facts as to his supervisorial liability claim and claim relating to the grievance process. Dkt. 128 at 1. In addition, Defendants argue that Plaintiff failed to comply with the California Tort Claims Act for any state law claims, and that they are entitled to qualified immunity. *Id.*

Also before the Court are Plaintiff's motion to compel discovery (dkt. 125-3) and his motion for sanctions (dkts. 125-4; 134).

Having read and considered the papers submitted herewith, the Court GRANTS Defendants' motion for summary judgment and addresses the pending motions below.

## PRELIMINARY ISSUES

Before addressing the merits of Defendants' motion for summary judgment, the Court first

---

[2] In an Order dated May 30, 2014, the Court denied Plaintiff's motion for leave to file a supplemental complaint because the supplemental complaint was ill-timed, widened the scope of the amended complaint, did not satisfy the relation back requirement under Federal Rule of Civil Procedure 15(c), and was broader than the original and amended complaints (raising post-complaint allegations). Dkt. 93 at 2-4.

United States District Court
Northern District of California

resolves two pending motions filed by Plaintiff.

### A.    Plaintiff's Motion to Compel

Plaintiff filed a motion to compel Defendants to produce to the Court for *in camera* review the Daily Funds Received Form for January 2008 as well as the Central Control logbook for January 2008 (with legible signatures).  Dkt. 125-3 at 11-12.  Defendants counter that these motions are improper because Plaintiff failed to first meet and confer, in violation of the Federal Rules of Civil Procedure and the Court's Local Rules.  Dkt. 128 at 10.  Defendants' contention is well taken.  *See* Fed. R. Civ. P. 37(a)(2)(A) (providing that a motion to compel must include certification that the movant has in good faith conferred or attempted to confer with non-disclosing party in an effort to secure disclosure without court action); Civ. L.R. 37-1 (same).  Because Plaintiff has not complied with these rules, his motion is subject to denial.  *Tri-Valley CARES v. U.S. Dept. of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion.").  Therefore, Plaintiff's motion to compel is DENIED.  Dkt. 125-3.

### B.    Plaintiff's Motion for Sanctions

Plaintiff moves for sanctions against Defendants Sung and Amrhein-Conama and against declarants Briggs, Baenziger, Burgess, and Duncan (Defendants' attorney) for fraudulent misconduct, misleading the Court, and submitting altered and/or falsified documents. Dkt. 125-4 at 1-2, Dkt. 134 at 1-2.  Plaintiff claims that they are liable for fraudulently removing a handwritten note at the top of the second level decision for appeal log no. SQ-08-00631 before submitting it in support of Defendants' motion for summary judgment.  Dkt. 125-4 at 6:11-15.

Defendants argue that there is no reason that the California Department of Corrections and Rehabilitation's ("CDCR's") copy of 602 appeal log no. SQ-08-00631 would include a handwritten note that Plaintiff claims to have written on his copy of the appeal after receiving it. *See* Duncan Decl. ¶ 14, Ex. M at 3.  They further argue the CDCR keeps in the ordinary course of business the complete file as part of its records, any interlineation added to the document after it is in the possession of an inmate is something CDCR would not be aware of.  Dkt. 128 at 11. Plaintiff argues that Defendants also removed a copy of Defendant Sung's January 24, 2008 cell

search receipt from 602 appeal log no. SQ-08-00631.  Dkt. 125-4 at 6:19-21.  However, there is no evidence that the cell search receipt was ever attached to, or a part of, that appeal.  The record shows that the cell search receipt was not part of the complete appeal file.  *See* Duncan Decl. ¶ 14, Ex. M.  As discussed in the analysis below, Plaintiff only *mentioned* in his appeal the cell search and confiscation of the television; therefore, the appeal responses did not address this issue.  *See id.*  Because there is no evidence that the Defendants, declarants, and Defendants' counsel made misrepresentations to this Court, Plaintiff's motion for sanctions is DENIED.  Dkts. 125-4, 134.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

United States District Court
Northern District of California

1  A district court may only consider admissible evidence in ruling on a motion for summary

2  judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

3  In support of the motion for summary judgment, Defendants have presented declarations from the

4  following: Defendants Amrhein-Conama, Sung, Wingo, Dasalla and Gonzales; Acting Chief of

5  the Office of Appeals R. Briggs; SQSP Senior Accounting Officer/Supervisor N. Burgess; SQSP

6  Appeals Coordinator M. Davis; and Attorney Duncan (Defendants' attorney). Dkts. 110-118.

7  Plaintiff has filed: his verified amended complaint (Dkt. 80); his verified opposition to

8  Defendants' motion (Dkts. 125-1-125-3); his verified declarations in response to Defendant

9  Sung's declaration (Dkt. 125-1 at 47-53; Dkt. 125-3 at 15-19), in response to Defendant Amrhein-

10 Conama's declaration (Dkt. 125-1 at 61-64), and relating to the "vindictive cell search" (Dkt. 125-

11 3 at 20-24); and a declaration by inmate K. Roland. The Court will construe these filings as

12 affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal

13 knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55

14 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## DISCUSSION

15

16 **I.     FIRST AMENDMENT CLAIMS – DELAY-OF-MAIL**

17 Plaintiff alleges that Defendants opened legal mail outside of his presence, in violation of

18 his First Amendment rights. Dkt. 80 at 30-42. Defendants argue that: (1) the undisputed facts

19 show that Plaintiff's incoming mail was not labeled appropriately as legal mail; and (2) there is no

20 evidence that either (a) Defendant Sung or (b) Defendant Gonzales opened or delayed Plaintiff's

21 legal mail in violation of his First Amendment rights. Dkt. 108 at 9-12.

22 **A.     Claim Against SQSP Mailroom Staff**

23 **1.     Legal Framework**

24 The issue of whether a prison official can open legal materials outside of an inmate's

25 presence is appropriately considered under the First Amendment. Prisoners enjoy a First

26 Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.

27 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison, however, may adopt

28 regulations or practices which impinge on a prisoner's First Amendment rights as long as the

6

regulations are "reasonably related to legitimate penological interests."  *See Turner v. Safley*, 482

U.S. 78, 89 (1987).  Prison officials may institute procedures for inspecting "legal mail," e.g., mail

sent between attorneys and prisoners.  *See Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974)

(incoming mail from attorneys).  But the opening and inspecting of "legal mail" outside the

presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to

petition the government.  *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (citing

*Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

### 2.      Analysis

Here, the parties dispute whether the opened mail was considered "legal mail."  In order to

be classified as "confidential mail" or "legal mail," the California Code of Regulations provides:

> Incoming letters must show the name, title, return address and the office of persons listed in Section 3141 on the outside of the envelope to be processed as confidential correspondence.  An attorney's return address must match the address listed with the State Bar.  A notice or request for confidentiality is not required on the envelope.  Correspondence that is appropriately addressed with a return address that indicates it may be confidential shall be processed and treated as confidential correspondence whether or not it is stamped as such.

Cal. Code Regs. tit. 15, § 3143.  Similarly, Defendants have outlined the procedure of sorting mail

at SQSP during the relevant time frame to be as follows:

> In 2007 and 2008, the process of sorting inmate legal mail from regular mail was a multi-step process that started with a Material and Stores Supervisor ("MSSI") outside of the prison and ended with San Quentin mailroom staff double-checking the work of the MSSI and feeding the presumably non-confidential mail into an automatic letter opener.  (*See* Decl. Wingo Supp. Summ. J. (Decl. Wingo) ¶¶ 3-5; Decl. Amrhein-Conama Supp. Summ. J. (Decl. Amrhein-Conama) ¶¶ 3-5.)  Defendant Dasalla served as the MSSI at San Quentin.  (Decl. Dasalla Supp. Summ. J. (Decl. Dasalla) ¶ 1.)  Dasalla's responsibilities included sorting and separating incoming mail with the assistance of the postmaster at the post office outside of San Quentin.  (*Id.* ¶ 2.)  It was Dasalla's custom and practice to sort incoming mail into several categories including: express mail, staff mail, certified mail, non-confidential inmate mail, confidential-legal mail, publications, newspapers, and packages.  (*Id.*)   After Dasalla and the postmaster sorted the incoming mail at the post office, Dasalla delivered the mail to the San Quentin mailroom. (*Id.*)

> San Quentin mailroom staff would then process incoming mail by confirming that the mail was properly addressed to the

inmate's cell.  (Decl. Wingo ¶ 5; Decl. Amrhein-Conama ¶ 5.)  If the envelope was not marked with the inmate's cell number, the mailroom staff would look-up and write the inmate's cell number on the envelope.  (*Id.*)  It was also customary practice for the mailroom staff to stamp the envelopes with a mark identifying them as the processor of the mail.  (*Id.*)  Mailroom staff were trained to continue to look for confidential-legal mail during the envelope cell marking process.  (*Id.*)  After the envelopes were cell marked, confidential-legal mail was set aside for delivery by the housing staff and trays of non-confidential mail were opened by an automatic letter opener.  (*Id.*)

The San Quentin mailroom processed a large volume of mail each day and occasionally mailroom staff would inadvertently place confidential mail into the automatic letter opener.  (Decl. Wingo ¶ 7; Decl. Amrhein-Conama ¶ 7.)  If confidential inmate mail was unintentionally opened, it was mailroom policy to complete a memorandum documenting the unintentional opening, attach it to the confidential mail, and to forward the mail to the inmate.  (*Id.*)  Occasionally a memorandum was not prepared when confidential mail was opened because the mailroom staff never identified that the mail was confidential legal mail after opening it.  (Decl. Wingo ¶ 8; Decl. Amrhein-Conama ¶ 8.)  In 2007 and 2008, the mailroom supervisors, Defendants Wingo and Amrhein-Conama, made every effort to identify and retrain any mailroom staff who failed to properly identify mail as confidential and prepare a memorandum documenting their inadvertent opening of the mail.

Dkt. 108 at 8-9.

Here, Plaintiff argues that his First Amendment rights were violated because his legal mail was opened outside of his presence, processed as regular mail, and the inadvertent opening of his legal mail was never documented on a memorandum as required by mailroom policy.  Dkt. 125-1 at 15, ¶ 21.  Plaintiff also complains that the mailroom policy of stamping opened mail with a mark identifying the person who opened the legal mail was not followed.  *Id.* at 17, 18, 19, 21, ¶¶ 23, 26, 27, 33.

Meanwhile, Defendants acknowledge that on eight occasions SQSP mailroom staff unintentionally opened Plaintiff's confidential legal mail by placing it into the automatic letter opener in mailroom.  Wingo Decl. ¶ 7; Amrhein-Conama Decl. ¶ 7.  Defendants also concede that in Plaintiff's case, a memorandum was not prepared after they opened his alleged confidential mail.  However, Defendants argue that a memorandum was not prepared because the mailroom staff never identified Plaintiff's mail as *confidential legal mail*.  Wingo Decl. ¶ 8; Amrhein-Conama Decl. ¶ 8.  Defendants further allege that SQSP mailroom staff and the U.S. Post Office

outside of SQSP worked together to ensure that inmate confidential legal mail were separated from regular inmate mail.  Wingo Decl. ¶¶ 3-6; Amrhein-Conama Decl. ¶¶ 3-6.  Defendants acknowledge that, occasionally, mistakes were made and the mailroom staff opened confidential legal mail in the mailroom instead of in the presence of the inmate/addressee. Wingo Decl. ¶¶ 7-8; Amrhein-Conama Decl. ¶¶ 3-6.  However, Defendants argue that SQSP's mailroom procedure was directly related to the legitimate penological interest in processing a large volume of inmate mail in an efficient manner.  Dkt. 128 at 4 (citing *Turner*, 482 U.S. at 89).  Defendants argue that the procedural mistakes and mail delays of the type Plaintiff has described do not rise to the level of First Amendment violations.  *Id.*  Specifically, Defendants contend that Plaintiff's incoming mail envelopes were insufficiently labeled as confidential mail.  *Id.*  Defendants argue as follow:

> The undisputed facts show Packnett's incoming mail was not labeled appropriately as confidential mail.  In each instance Packnett details in his amended complaint, the envelopes containing the allegedly confidential mail did not bear the "name [or] title" of an attorney.  Packnett's incoming mail was labeled as follows:
>
> 1. An envelope received on January 3, 2007 identified the sender as: bpb, Bailey Perrin Bailey, A Registered Limited Liability Partnership, 440 Louisiana Suite 2100, Pharmaceutical Litigation Department, Houston, Texas 77002.  (Decl. Duncan ¶ 3, Ex. B);
>
> 2. An envelope received on January 22, 2007 identified the sender as: Watts Law Firm.  (*Id.* ¶ 4, Ex. C);
>
> 3. An envelope received on February 9, 2007 identified the sender as: State Bar of Texas, P.O. Box 12487, Austin, Texas 78711-2487.  (*Id.* ¶ 7, Ex. F);
>
> 4. An envelope received on February 15, 2007 identified the sender as: bpb, Bailey Perrin Bailey, A Registered Limited Liability Partnership, Seroquel Litigation Department, 440 Louisiana Suite 2100, Houston, Texas 77002.  (*Id.* ¶ 7, Ex. F);
>
> 5. An envelope received on March 20, 2007 identified the sender as: bpb, Bailey Perrin Bailey, A Registered Limited Liability Partnership, Seroquel Litigation Department, The Lyric Center, 440 Louisiana Suite 2100, Houston, Texas 77002.  (*Id.* ¶ 8, Ex. G);
>
> 6. An envelope received on June 14, 2007 identified the sender as: bpb, Bailey Perrin Bailey, A Registered Limited Liability Partnership, Seroquel Litigation

United States District Court
Northern District of California

Department, 440 Louisiana Suite 2100, Houston, Texas 77002. (*Id.* ¶ 10, Ex. I);

7. An envelope received on October 5, 2007 identified the sender as: bpb, Bailey Perrin Bailey, A Registered Limited Liability Partnership, Seroquel Litigation Department, 440 Louisiana Suite 2100, Houston, Texas 77002. (*Id.* ¶ 12, Ex. K); and

8. An envelope received on January 18, 2008 identified the sender as: Watts Law Firm. (*Id.* ¶ 14, Ex. M).

While the items of mail at issue bore return addresses indicating they may have been from law offices or attorneys, the phrases "Bailey Perrin Bailey, A Registered Limited Liability Partnership," "State Bar of Texas," and "Watts Law Firm" are not sufficient to create the designation of confidential, legal mail. Cal. Code Regs. tit. 15[,] § 3143 (2006, 2007). The undisputed material facts show that none of the items of mail described in Packnett's amended complaint meet the criteria for confidential mail.

Dkt. 108 at 10-11.

In his opposition, Plaintiff counters Defendants' argument, and claims that the documents contained in the envelopes at issue were on "law firm letterhead" and indicated that the correspondence was from an attorney, "K. Camp Bailey." Dkt. 125-1 at 15:22-26, ¶ 21. Plaintiff thus seems to concede that the *envelope* did not contain the name and address of the attorney, but instead seems to be arguing that the documents *inside* contained such information, or, that the "name" of the law firm (as opposed to the attorney) on the envelope should be sufficient. *Id.*

However, "[t]he Supreme Court ha[s] held that . . . prison officials [can] require both that the letters be specially marked with **the name and address of the attorney** and that the attorney communicate first with prison officials." *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981) (citing *Wolff*, 418 U.S. at 575-77) (emphasis added).

In *Wolff*, the Supreme Court was presented with the narrow issue of "whether letters determined or found to be from attorneys may be opened by prison authorities in the presence of the inmate or whether such mail must be delivered unopened if normal detection techniques fail to indicate contraband." 418 U.S. at 575. Without specifying which constitutional rights might be violated when prison officials open mail from an inmate's attorney in the inmate's presence, the Court set forth several constitutionally appropriate prison procedures. *Id.* at 576. Most relevantly,

United States District Court
Northern District of California

United States District Court
Northern District of California

the Court stated that it would be an appropriate procedure to require confidential legal communication to be "specially marked as originating from an attorney, with his name and address being given." *Id.* Meanwhile, the Ninth Circuit has left open whether legal mail must be opened and read in the prisoner's presence and whether a prison official's failure to do so constitutes a violation of the First Amendment. *Sherman*, 656 F.2d at 528. And, as explained above, a prison may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89.

Here, because *Wolff* explicitly approves of the requirement in the California Code of Regulations, title 15, section 3143 that mail must be specially marked with **an attorney's name and title** in order to be considered confidential/legal mail, 418 U.S. at 575-77, and because no such markings were on the envelopes of the mail that was opened, Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that Defendants' actions rose to the level of a First Amendment violation. Further, in accordance with *Turner*, SQSP's mailroom procedure was reasonably related to the prison's legitimate penological interest in processing a large volume of inmate mail in an efficient manner. *See Turner*, 482 U.S. at 89.

Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's First Amendment claim stemming from his allegation that his legal mail was opened outside of his presence.

### B.   Claim Against Defendant Sung

Plaintiff claims that in January 2008, Defendant Song violated his First Amendment rights when he kept in his possession "mishandle[ed]" "confidential attorney-client correspondence from Watts Law Firm" addressed to Plaintiff, specifically, a settlement check. Dkt. 80 at 39-40.

#### 1.   Factual Background

On January 18, 2008, incoming mail addressed to Plaintiff from "Watts Law Firm" was opened by mailroom staff and sent to Defendant Sung, a security squad officer with the Investigative Services Unit ("ISU"), for investigation. Amrhein-Conama Decl. ¶ 11; Duncan Decl. ¶ 14, Ex. M.

United States District Court
Northern District of California

1    In 2008, Defendant Sung's responsibilities as a security squad officer with the ISU

2    included investigating checks and cash that were mailed into the prison for inmates.  Any check

3    made out to inmates in large amounts were forwarded to the ISU for investigation.  As part of the

4    ISU investigation, the bank and drawer of the check were contacted in an effort to identify any

5    irregularities or issues with the check.  If the check was found to be valid, the check was

6    forwarded to the trust department for deposit into the inmate's trust account.  Sung Decl. ¶ 2.

7    During January 2008, Defendant Sung investigated a large check that was made payable to

8    Plaintiff in the amount of $75,600.  Upon Defendant Sung's review of the check and the

9    accompanying envelope, he noticed that the express mailing label included with the check was

10   faded and illegible and did not include a "confidential" stamp and/or "legal" stamp.  Sung Decl.

11   ¶ 3; Duncan Decl. ¶ 14, Ex. M.

12   During Defendant Sung's investigation of Plaintiff's check, he contacted the bank and the

13   drawer of the check and determined that the check was valid.  Defendant Sung also learned that

14   the check was issued by a law firm.  Defendant Sung then met with Plaintiff in the ISU office to

15   notify him that a mailroom employee had "inadvertently" opened the confidential legal mail

16   outside of his presence and that the employee would be re-trained.  Sung Decl. ¶ 4.

17   After Defendant Sung completed his investigation of the check and met with Plaintiff, he

18   forwarded the check to the trust department for deposit into Plaintiff's trust account.  *Id.* ¶ 5.

19          **2.     Analysis**

20   The record shows that in 2008, Defendant Sung's responsibilities as a security squad

21   officer with the ISU included investigating checks and cash that were mailed into the prison for

22   inmates.  Sung Decl. ¶ 2.  The undisputed evidence shows that Defendant Sung investigated a

23   $75,600 check for Plaintiff, found it to be valid, and forwarded the check to the trust department

24   for deposit into Plaintiff's trust account.  *Id.* ¶¶ 2-5; Duncan Decl. ¶ 14, Ex. M.

25   Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim

26   the Defendant Sung's aforementioned actions violated his First Amendment rights.  Therefore,

27   Defendant Sung is entitled to summary judgment on Plaintiff's delayed mail claim against him

28   relating to the alleged mishandling of legal mail, i.e., a settlement check.

United States District Court
Northern District of California

### C.        Claim Against Defendant Gonzales

Similarly, Plaintiff claims that in January 2008, Defendant Gonzales violated his First Amendment rights when she received from Defendant Sung the "mishandle[ed]" "confidential attorney-client correspondence from Watts Law Firm" addressed to Plaintiff, specifically, a settlement check.  Dkt. 80 at 39-40.

#### 1.        Factual Background

In January 2008, Defendant Gonzales was an Accounting Technician at SQSP's accounting office, and she was responsible for reviewing incoming checks and cash that were received by the accounting department.  Defendant Gonzales was also responsible for conducting the initial processing of incoming checks for inmates, but she was not responsible for depositing the funds into the inmate's trust accounts.  Gonzales Decl. ¶¶ 1-3.

In January 2008, if a check came into the accounting department for an amount larger than $500, unless Defendant Gonzales was instructed otherwise by her supervisor, she was required to forward a copy of the check to the ISU for investigation of potential criminal activity.  After investigating the check, an ISU officer would either approve or reject the check for processing into the inmate's trust account.  Gonzales Decl. ¶ 3.  Defendant Gonzales would then prepare a deposit receipt and record the information regarding the check in her computer.  Defendant Gonzales would then forward the check and deposit receipt to the accounting department cashier for deposit into the bank.  Thereafter, the cashier would forward the paperwork to a member of the trust accounting staff for input into the inmate's trust account.  The entire process from receiving the check in the accounting department, ISU investigating it, depositing it, and posting to the inmate's trust account could take anywhere from several days to more than a week.  Gonzales Decl. ¶ 4.

Defendant Gonzales does not specifically recall processing Plaintiff's $75,600 check in January 2008.  Defendant Gonzales does not recall what if any envelope or accompanying documents were included with the check.  She reviewed a photocopy of the $75,600 check from Matthew L. Garretson, TTEE to Kenneth Packnett dated January 15, 2008, a deposit receipt that she prepared for the check on January 24, 2008, and a printout from the Inmate Trust Accounting System Trust Account Display indicating that a $75,600 check was posted to Plaintiff's trust

account on February 4, 2008.  Based on Defendant Gonzales's review of the documents, she determined that her supervisor, Tomeika Mitchell, approved the check for processing into Plaintiff's trust account.  Gonzales Decl. ¶¶ 5-6; Burgess Decl. ¶¶ 4-6, Exs. A-C.

### 2.    Analysis

The record shows that in January 2008, Defendant Gonzales's responsibilities as an accounting technician in the SQSP accounting office included reviewing incoming checks and cash that were received by the accounting department.  Gonzales Decl. ¶¶ 1-3.  The undisputed evidence shows that Defendant Gonzales documented the receipt of Plaintiff's $75,600 check and forwarded to the trust department for deposit into Plaintiff's trust account.  *Id.* ¶¶ 2-5; Burgess ¶¶ 4-6, Exs. A-C.  Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that Defendant Gonzales's actions rose to the level of a violation of his First Amendment rights.  Therefore, Defendant Gonzales is entitled to summary judgment on Plaintiff's delayed mail claim relating to the alleged mishandling of legal mail, i.e., a settlement check.

## II.    FIRST AMENDMENT CLAIM – RETALIATION BY CELL SEARCH

Plaintiff claims that the Defendants Amrhein-Conama and Sung acted in retaliation by searching his cell in early 2008 and confiscating his property, including a television.  Dkt. 80 at 23-25, 40-41.

Defendants argue that the prison has no record of his aforementioned retaliation claim having been exhausted at the final level of review.  Dkt. 108 at 6-8.

### A.    Legal Framework

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions.  42 U.S.C. § 1997e(a).  Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."  *Booth v. Churner*, 532 U.S. 731, 739-40 (2001).  The PLRA requires proper exhaustion of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  Thus, compliance with prison grievance

United States District Court
Northern District of California

1   procedures is required by the PLRA to properly exhaust.  *Id.*  The PLRA's exhaustion requirement

2   cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative

3   grievance or appeal."  *Id.* at 84.

4          The California Department of Corrections and Rehabilitation ("CDCR") provides its

5   inmates and parolees the right to appeal administratively "any departmental decision, action,

6   condition, or policy which they can demonstrate as having an adverse effect upon their welfare."

7   Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative

8   appeals alleging misconduct by correctional officers.  Cal. Code Regs. tit. 15, § 3084.1(e).  In

9   order to exhaust available administrative remedies within this system, a prisoner must submit his

10  complaint on CDCR Form 602 and proceed through several levels of appeal: (1) informal level

11  grievance filed directly with any correctional staff member, (2) first formal level appeal filed with

12  one of the institution's appeal coordinators, (3) second formal level appeal filed with the

13  institution head or designee, and (4) third formal level appeal filed with the CDCR director or

14  designee (i.e., "Director's level").   Cal. Code Regs. tit. 15, § 3084.5; *Brodheim v. Cry*, 584 F.3d

15  1262, 1264-65 (9th Cir. 2009).  This satisfies the administrative remedies exhaustion requirement

16  under Section 1997e(a).

17         Failure to exhaust is "an affirmative defense the defendant must plead and prove."  *Jones*

18  *v. Bock*, 549 U.S. 199, 204, 216 (2007).  A defendant may raise a failure to exhaust defense

19  through a motion for summary judgment.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

20  banc).  Under *Albino*, "a defendant must first prove that there was an available administrative

21  remedy and that the prisoner did not exhaust that available remedy."  *Williams v. Paramo*, 775

22  F.3d 1182, 1191 (9th Cir. 2015).  The burden then shifts to the plaintiff, "who must show that

23  there is something particular in his case that made the existing and generally available

24  administrative remedies effectively unavailable to him by 'showing that the local remedies were

25  ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Id.*  The ultimate

26  burden of proof, however, remains with the defendants, and the evidence must be viewed in the

27  light most favorable to the plaintiff.  *Id.*

28

United States District Court
Northern District of California

**B.    Analysis**

Defendants allege as follows:

> The Office of Appeals of the CDCR, receives and maintains all inmate administrative appeals accepted for the third and final level of review with the exception of inmate health care appeals. (Decl. Briggs Supp. Defs.' Mot. Summ. J. (Decl. Briggs) ¶ 2.)  Upon review of its database, the Office of Appeals shows that Packnett exhausted eight non-healthcare-related administrative grievances at the third level of review between January 4, 2007 and December 31, 2009.   (*Id.* ¶ 6, Ex. A.)   But none of the appeals that Packnett exhausted at the final level of review concerned allegations that Packnett's cell was inappropriately searched and his television was confiscated in early 2008.  (Decl. Briggs ¶ 6; Decl. Duncan Supp. Defs.' Mot. Summ. J. (Decl. Duncan) ¶¶ 3-15, Exs. B-N.)

Dkt. 108 at 7.

Meanwhile, Plaintiff contends that he raised this retaliation claim in 602 appeal log no. SQ-08-00631.  Dkt. 125-1 ¶ 15.

In their reply, Defendants argue that 602 appeal log no. SQ-08-00631 only describes "Unauthorized Opening, Obstructing the Delivery Of, and Seizure of Appellant's Confidential Legal Mail."  Dkt. 128 at 2.  Defendants acknowledge that Plaintiff *mentions* the cell search and the confiscation of his television in an attachment to the grievance, but they argue that his concerns in the appeal were only relating to interference of his legal mail, as follows:

> The actions requested in appeal number SQ-08-00631 were: (1) return of the legal documents, seized on January 18, 2008, (2) written notification why documents were seized, (3) receipt for check, identification of individual who forwarded documents to Investigative Services Unit, identification of the mailroom supervisor who the documents were returned to, and (4) identification of the employee who illegally opened legal mail and why the mailroom sergeant did not issue a chrono. ([Duncan Decl., Ex. M at 7.])  Packnett did not request that his television be returned or argue that his television was inappropriately confiscated. (*Id.*)

> On a supplemental page attached to appeal number SQ-08-00631, Packnett briefly mentioned that "Officer Sung conducted a clothed body search of appellant and his cell.["]  (*Id.*, Ex. M at 9.) And Packnett stated "[a]t the conclusion of the cell search of appellant's cell, it is noted that Officer Sung removed appellant's new television from his cell." (*Id.*)  But Packnett did not argue that the removal of his television by Officer Sung was a problem or inappropriate.  Because Packnett's appeal described a problem with the alleged interference of his legal mail, the appeal was processed and responded to as a grievance regarding legal mail.

United States District Court
Northern District of California

1    Dkt. 128 at 2.

2           The Court has reviewed 602 appeal log no. SQ-08-00631, and agrees with Defendants'

3    assessment that Plaintiff merely *mentions* the alleged retaliatory 2008 cell search and confiscation

4    of the television in this grievance.  *See* Duncan Decl., Ex. M.  There is also no evidence showing

5    that Plaintiff raised it as an actual *issue* on this grievance.  *Id.*  According to the Director's level

6    response, Plaintiff's position was that prison officials "inappropriately opened his Legal Mail, this

7    obstructing delivery of his mail and committing seizure of his Confidential Mail."  *Id.*  The entire

8    response deals with the legal mail issue, and nowhere does the Director's level reviewer handle

9    any retaliation claim dealing with the 2008 cell search and confiscation of the television.  *Id.*

10          The Court further notes that even if Plaintiff had raised his retaliation as an additional *issue*

11   in 602 appeal log no. SQ-08-00631, it would have been likely screened out as a separate issue

12   from the other issue relating to his legal mail.  According to state regulations, each inmate appeal

13   is limited to one issue or related set of issues.  Cal. Code Regs. tit. 15, § 3084.2(a)(1).  "The

14   inmate . . . shall not combine unrelated issues on a single appeal form for the purpose of

15   circumventing appeal filing requirements.  Filings of appeals combining unrelated issues shall be

16   rejected and returned to the appellant by the appeals coordinator with an explanation that the

17   issues are deemed unrelated and may only be submitted separately."  *Id.*  Nevertheless, it seems

18   that the prison did not even acknowledge that a second retaliation issue was brought up in 602

19   appeal log no. SQ-08-00631; therefore, there was no issue to screen out.

20          In sum, Defendants met their initial burden as the moving party by setting forth evidence

21   to demonstrate Plaintiff's non-exhaustion, specifically by conducting a search of the CDCR's

22   records and finding no grievances submitted to the Director's level by Plaintiff concerning the

23   aforementioned retaliation claim.  *See Paramo*, 775 F.3d at 1191.  Defendants cite the declaration

24   of Acting Chief Briggs of the Office of Appeals, who clearly states: "None of the appeals

25   exhausted at the final level of review concerned allegations that [Plaintiff's] cell as inappropriately

26   searched and that his television was confiscated in early 2008."  Briggs Decl. ¶ 6.  Under *Albino*,

27   Defendants have therefore proven that there was an available administrative remedy and that

28   Plaintiff did not exhaust that available remedy.  *See Paramo*, 775 F.3d at 1191.  Upon the burden

17

1    shifting to Plaintiff, he has failed to show that "there is something particular in his case that made

2    the existing and generally available administrative remedies effectively unavailable to him by

3    'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or

4    obviously futile.'"  *Id.*  Instead, as mentioned above, Plaintiff relies on 602 appeal log no. SQ-08-

5    00631 as proof of exhaustion, but his reliance is unwarranted because the retaliation issue was not

6    presented in that grievance.  Thus, the aforementioned evidence presented by Plaintiff is

7    insufficient to defeat Defendants' motion for summary judgment.  Meanwhile, the evidence

8    produced by the Defendants *is sufficient* to carry their ultimate burden of proof in light of

9    Plaintiff's verified factual allegations.

10       Accordingly, Defendants are entitled to summary judgment based on the failure to exhaust

11   administrative remedies, and their motion is GRANTED as to the claim that Defendants Amrhein-

12   Conama and Sung acted in retaliation during the 2008 cell search and confiscation of Plaintiff's

13   television.

14   **III.   FIRST AMENDMENT CLAIMS - RETALIATION RELATING TO MAIL DELAY**

15       Plaintiff alleges that Defendants also retaliated against him in the following ways for

16   exercising his First Amendment rights: (1) that Defendant Wingo's "threat" (in his informal

17   response to Plaintiff's grievance) to "not to hold any legal mail" was retaliatory and "made against

18   Plaintiff for exercising in his right to engage in confidential attorney-client correspondence" (dkt.

19   80 at 30); (2) that Defendant Amrhein-Conama's act of ignoring prison procedure and "voiding

20   the use of any employee stamp, open-in-error stamp, or written stamp regarding how and why

21   legal mail is opened" was an "act[ ] of reprisal for engaging in protected activity, i.e.,

22   communicating with retain attorneys in confidence" (*id.* at 34-35); and (3) that the SQSP

23   mailroom staff Defendants' acts of "opening, reading and copying" Plaintiff's legal mail outside

24   of his presence . . . created a 'chilling' effect on Plaintiff fundamental Freedom of Speech rights

25   (*id.* at 42)."  The Court will address each incident in turn below.

26       **A.    Legal Framework**

27       "Within the prison context, a viable claim of First Amendment retaliation entails five basic

28   elements:  (1) An assertion that a state actor took some adverse action against an inmate

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

To raise a triable issue as to motive, a plaintiff must offer evidence that the defendants knew about the protected speech. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). In addition, a plaintiff must show "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). To survive summary judgment without direct evidence, therefore, a plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum*, 647 F.3d at 882 (internal quotation marks and citation omitted).

## B. Analysis

### 1. Claim Against Defendant Wingo

Defendants argue that to the extent that Plaintiff is claiming that Defendant Wingo, the

United States District Court
Northern District of California

United States District Court
Northern District of California

SQSP mailroom supervisor from June 6, 2005 to July 2, 2007 retaliated against him, they disagree and contend that the evidence is insufficient to raise a disputed issue of fact.  Dkt. 128 at 6-7.

The record shows that after Plaintiff discovered his legal mail was opened on January 3, 2007, he filed 602 appeal log no. SQ-07-00455, requesting the identity of the staff member who opened his legal mail and replacement of a missing prepaid envelope.  Duncan Decl., Ex. B. Among other relief requested, Plaintiff asked for "no retaliation by withholding future mail."  *Id.* Defendant Wingo reviewed this appeal at the informal level, and stated: "You will not be reimbursed for prepaid envelope that was not destroyed by mailroom staff.  Your mail may have been opened in error by staff, legal mail (incoming) is logged by Housing Unit Staff.  **No mail will be held for your appeal.**"  *Id.* (emphasis added).

In his opposition, Plaintiff claims that Defendant Wingo's response "created a factual inference that the prepaid envelope was destroyed with the possibility of incoming legal mail irregularity in the future."  Dkt. 125-1 at 16:1-23, ¶ 22.  It seems that Plaintiff interpreted Defendant Wingo's statement as a threat of future retaliation and concludes that mailroom staff destroyed his prepaid postage envelope.  However, in her declaration, Defendant Wingo clarifies that her intent in stating "No mail will be held for your appeal" was to assure Plaintiff that no retaliatory withholding of his mail would occur in the future.  Wingo Decl. ¶ 11. Plaintiff's appeal had, in fact, requested assurances that no retaliatory withholding of his mail would occur as a result of the appeal.  Duncan Decl., Ex. B at 1.  Contrary to Plaintiff's allegations, Defendant Wingo was simply responding to Plaintiff's request and there is no plausible reason to conclude that Defendant Wingo's statement "No mail will be held for your appeal" was a threat.

Plaintiff also contends that Defendant Wingo's role as the SQSP mailroom supervisor in February 2007 when mailroom staff inadvertently opened two pieces of his legal mail, "constituted profound and extreme acts of purposeful retaliation against Plaintiff."  Dkt. 125-1 at 17:23-27, ¶ 25.  In addition, Plaintiff makes the unsupported allegation that Defendant Wingo "encouraged [an] atmosphere of disregard for proper mail handling procedure."  *Id.* 18:20-21, ¶ 26.  But, once again, Plaintiff's allegations regarding Defendant Wingo are without support and merely speculative.  *See Wood*, 753 F.3d at 904-05 (speculation on defendant's motive is

1  insufficient to defeat summary judgment).   The record shows that, as a mailroom sergeant,

2  Defendant Wingo's responsibilities were limited to accounting for the mailroom staff, delegating

3  and revising work assignments, resolving problems, and addressing grievances or appeals arising

4  from mailroom operations.  Wingo Decl. ¶ 2.  Defendant Wingo's direct responsibilities did not

5  include opening, inspecting, reading, or retaining the contents of inmate mail.  *Id.*  As previously

6  discussed, because the SQSP mailroom processed a large volume of mail each day, mailroom staff

7  would occasionally make mistakes and process legal mail as regular mail.  *Id.* ¶ 7.  In the six

8  instances where Plaintiff's legal mail was opened during Defendant Wingo's tenure as mailroom

9  supervisor, the mail was inadvertently opened in the mailroom because the sender failed to

10  appropriately mark the mail in a way that SQSP would recognize it as legal mail.   Defendant

11  Wingo was not directly responsible for the inadvertent opening of Plaintiff's legal mail, *see id.*

12  ¶ 13, and mere speculation she retaliated against Plaintiff is not enough to defeat summary

13  judgment.  *See Wood*, 753 F.3d at 904 ("mere speculation that defendants acted out of retaliation

14  is not sufficient").

15       Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim

16  that Defendant Wingo's aforementioned actions violated his First Amendment rights.  Therefore,

17  Defendant Wingo is entitled to summary judgment on Plaintiff's retaliation claim against her.

18            **2.       Claim Against Defendant Amrhein-Conama**

19       Defendants argue that to the extent that Plaintiff is claiming Defendant Amrhein-Conama,

20  the SQSP mailroom supervisor from August 6, 2007 to January 13, 2008 and January 29, 2008 to

21  February 23, 2009, retaliated against him, Defendants disagree and contend that the evidence is

22  insufficient to raise a disputed issue of fact.  Dkt. 128 at 7-8.

23       Plaintiff argues that prison officials continued to retaliate against him on October 5, 2007

24  when he received a seventh item of legal mail that was opened outside of presence with no

25  explanation for why the legal mail was processed as regular mail.  Dkt. 125-1 at 24:5-12, ¶ 40.

26  Plaintiff maintains that Defendant Amrhein-Conama was unable "to account or control her

27  employees or obey the law."  *Id.* 24:13-15, ¶ 41.  Plaintiff specifically claims that "[b]ecause

28  Defendant Amrhein-Conama stopped using employee identification stamps on [Plaintiff's] legal

United States District Court
Northern District of California

1   mail, the pattern and practice of opening and reading [his] legal mail continued unabated." *Id.*

2   24:23-26, ¶ 42.

3          The evidence, however, indicates that Defendant Amrhein-Conama did not personally sort

4   legal mail from regular mail during her tenure as the SQSP mailroom sergeant.  Amrhein-Conama

5   Decl. ¶ 10.  Occasionally, Defendant Amrhein-Conama double-checked the mail trays to ensure

6   that confidential legal mail was sorted out from the regular mail.  *Id.*  However, Defendant

7   Amrhein-Conama claims she never, opened, inspected, read, retained, or delayed the processing of

8   Plaintiff's mail. *Id.* ¶ 15.  Furthermore, although the customary practice was for the mailroom

9   staff to stamp the envelopes identifying the processor of the mail, *id.* 3:1-2, ¶ 5, it is possible that

10  SQSP mailroom staff did not always follow this practice.  Plaintiff's allegation that Defendant

11  Amrhein-Conama "stopped" such a practice is mere speculation of an act of retaliation against

12  Plaintiff; therefore it is insufficient to defeat summary judgment.  *See Wood*, 753 F.3d at 904.

13  Lastly, the record shows that Defendant Amrhein-Conama was not directly responsible for the

14  inadvertent opening of Plaintiff's legal mail, *see* dkt. 125-1 ¶ 15, and Plaintiff's allegation that she

15  did so in retaliation is mere speculation.  *Id.*  To the extent Plaintiff wishes to hold Defendant

16  Amrhein-Conama liable for the acts of her subordinates, as further explained below, there is no

17  respondeat superior liability under section 1983 solely because a defendant is responsible for the

18  actions or omissions of another.  *See Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1976); *see*

19  *also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

20         Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his

21  retaliation claim against Defendant Amrhein-Conama.  Therefore, Defendant Amrhein-Conama is

22  entitled to summary judgment on Plaintiff's First Amendment claim against her.

23            **3.**     **Claim Against SQSP Mailroom Staff Defendants**

24         Plaintiff claims that his First Amendment rights were violated when the SQSP mailroom

25  staff Defendants wrongfully opened and delayed his legal mail, and that they did so with

26  retaliation motives.

27         Defendants are entitled to summary judgment on Plaintiff's claim of retaliation because

28  there is an absence of evidence as to a retaliatory motive and whether the alleged mishandling of

Plaintiff's mail chilled his First Amendment rights.

      In determining whether a retaliatory motive exists, a relevant factor includes whether the defendant was aware of the prisoner's protected conduct.  *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  Here, Plaintiff does not proffer facts to show that Defendants knew about his protected conduct or that the protected conduct motivated Defendants to retaliate.  The record shows that the SQSP mailroom staff did not consider Plaintiff's mail "legal" when they opened it, thus indicating a lack of retaliatory motive.  Even assuming that Defendants knew about Plaintiff's protected activities, although retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence, *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003), it is not established simply by showing adverse activity by the defendant after protected speech; rather, the plaintiff must show a nexus between the two, *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").  Here, Plaintiff has not met his burden of showing that retaliation was the "substantial" or "motivating" factor behind Defendants' actions of opening his legal mail.  Plaintiff's bare factual assertions that the mishandling of his mail was motivated by such reason is no more than *post hoc, ergo propter hoc*.  In other words, Plaintiff seems to assert that because he had been handling several lawsuits, the mishandling of his mail (including any settlement checks) must have been retaliatory based upon suspect timing.  Yet, Plaintiff has put forth no non-speculative evidence showing a triable issue of fact of a causal nexus.  For example, he offers no evidence of having personal knowledge, as opposed to offering speculation, of such a motive.  Further, there is no evidence that any of these Defendants expressed opposition to Plaintiff's First Amendment activities.  Nor is there evidence tending to show that Defendants' reasons for opening his legal mail were false or pretextual, i.e., as mentioned above, Defendants claim they were unaware that the mail they opened outside his presence should have been considered "legal mail."

      In addition, Plaintiff has not shown that Defendants' acts of mishandling his legal mail had the impermissible chilling effect on his constitutional right to petition the government.  A prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always

have a chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm). The prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim. *See Rhodes*, 408 F.3d at 568-69 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit). "[T]he proper First Amendment inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 568. Here, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Outside of reciting the element that Defendants "chilled" his First Amendment rights, Plaintiff does not otherwise support this element with any facts. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Even so, an allegation of harm, rather than a "chilling effect," may be a sufficient basis for a claim of retaliation. *Rhodes*, 408 F.3d at 569-70. However, in the challenged instances of mishandled legal mail, there is an absence of evidence that Plaintiff was harmed. In each instance, Plaintiff promptly contested the opening of his legal mail outside his presence, and on appeal, it was determined that Plaintiff's mail had been opened inadvertently. Thereafter, Plaintiff's mail was eventually delivered to him, including any settlement checks. In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977). Here, while the evidence shows that his legal mail was in fact opened inadvertently, Plaintiff has not provided sufficient evidence showing that the opening of his mail outside of his presence had the impermissible chilling effect on his constitutional right to petition the government, or that he was otherwise harmed. *See O'Keefe*, 82 F.3d at 325.

Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that the SQSP mailroom staff Defendants' actions of opening his legal mail violated his First Amendment rights. Therefore, these Defendants are entitled to summary judgment on Plaintiff's retaliation claim against them.

United States District Court
Northern District of California

IV.     **REMAINING CLAIMS**

   A.     **Supervisory Liability Claims**

   Plaintiff alleges that his constitutional rights were violated when the SQSP mailroom staff Defendants intentionally opened, read, copied, and delayed his attorney-client communication. However, he cannot link certain Defendants to the opening or delay of delivery of his legal mail. For example, Plaintiff's allegations that Defendants Ayers, Cramer, Grannis, Wingo, and Amrhein-Conama reviewed and denied his grievances, that Defendant Ayers supervised the prison, and that Defendants Wingo and Amrhein-Conama supervised the SQSP mailroom do not establish the requisite level of personal involvement. Defendants cannot be found liable under the theories of vicarious liability or respondeat superior for civil rights violations under the Civil Rights Act.

   Defendants whose personal involvement is not alleged cannot be held liable for the acts of their subordinates under a theory of respondeat superior or vicarious liability. *See Milton*, 527 F.2d at 1159. Vicarious liability on the part of a supervisory official is not recognized as a basis for liability under the Civil Rights Act. *Palmer v. Sanderson*, 9 F.3d 1433, 1438 (9th Cir. 1993). A supervisor is liable only when he or she has directly participated in or proximately caused the alleged deprivation. *Id.* at 1437-38; *see also Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). The law is clear that liability of supervisory personnel must be based on more than merely the right to control others. *Monell v. Department of Social Services*, 436 U.S. 658, 694 n.58 (1978).

   Here, Plaintiff has not made a causal link between Defendants Ayers, Cramer, Grannis, Wingo, and Amrhein-Conama and a violation of his constitutional rights. To the extent these Defendants are sued in their capacity as supervisory officials under the theory of respondeat superior, Plaintiff fails to raise a material issue of fact against them. Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's supervisory liability claims.

   B.     **Claims Relating to Grievance Process**

   Plaintiff fails to raise a material issue of fact against Defendants Ayers, Cramer, Grannis, Wingo, or Amrhein-Conama for their denials of his 602 appeals because there is no constitutional

United States District Court
Northern District of California

1   right to a prison administrative appeal or grievance system. *Ramirez v. Galaza*, 334 F.3d 850, 860

2   (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Flick v. Alba*, 932

3   F.2d 728 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not

4   compromised by the prison's refusal to entertain his grievance.").

5       Under the California Code of Regulations, title 15, prisoners have a purely procedural right

6   to prison appeals that cannot form the basis of a constitutionally cognizable liberty interest and

7   therefore is not actionable under 42 U.S.C. § 1983. *See Smith v. Nonan*, 992 F.2d 987, 989 (9th

8   Cir. 1993); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Ramirez*, 334 F.3d

9   at 860. To the extent that these Defendants are sued in their capacity as administrative appeal

10   reviewers, Plaintiff fails to raise a material issue of fact against them. Accordingly, Defendants'

11   motion for summary judgment is GRANTED as to Plaintiff's claims against these Defendants

12   relating to the grievance process.

13       **C.**     **State Law Claims**

14       Defendants move to dismiss Plaintiff's state law claims for failure to comply with the

15   California Tort Claims Act and file a claim with the California Victim's Compensation

16   Government Claim Board ("VCGCB"). Under California law, the filing of a tort claim in the time

17   and manner prescribed by state law is a prerequisite to the filing of a lawsuit against any state

18   employee or entity. Cal. Gov. Code §§ 905.2, 911.2, 945.4, 950.2; *Munoz v. California*, 33 Cal.

19   App. 4th 1767, 1776 (1995). The California Tort Claims Act provides the requisites for the filing

20   of a tort claim against state employees and entities. Under the Tort Claims Act, a tort claim

21   against a state employee or entity must be presented to the VCGCB within six months of the

22   accrual of the cause of action. *See* Cal. Gov. Code § 911.2. Timely claim presentation is not

23   merely a procedural requirement but "a condition precedent to plaintiff's maintaining an action

24   against [a state employee or entity] defendant." *California v. Super. Ct. (Bodde)*, 32 Cal. 4th

25   1234, 1240 (2004). Failure to file a timely claim with the VCGCB is fatal to a cause of action for

26   negligence or other state tort. *See Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*,

27   976 F.2d 487, 495 (9th Cir. 1992) (citing *City of San Jose v. Super. Ct. (Lands Unlimited)*, 12 Cal.

28   3d 447, 454 (1974)).

The Court takes judicial notice that an authorized custodian of records for the VCGCB conducted a search of the VCGCB's records from January 1, 2007 through December 31, 2008, Duncan Decl., Ex, O, and found that Plaintiff never filed a claim related to his instant causes of action against Defendants. *See Marsh v. San Diego County*, 432 F. Supp. 2d 1035, 1043-44 (S.D. Cal. 2006) (courts may take judicial notice of records and reports of administrative bodies, including the VCGCB). Accordingly, Plaintiff's state law claims are therefore DISMISSED. *See United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980) (state tort claim not presented in accordance with California Tort Claims Act barred from consideration in federal action).

### D.    Punitive Damages Claims

Finally, dismissal of Plaintiff's claims for punitive damages is in order as punitive damages may be awarded in a section 1983 suit only "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is no indication whatsoever that any of Defendants' alleged wrongdoing rose to this requisite high level of culpability. Accordingly, Plaintiff's claims for punitive damages are DISMISSED.

## CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.    Plaintiff's motion to compel is DENIED. Dkt. 125-3.

2.    Plaintiff's motion for sanctions is DENIED. Dkts. 125-4, 134.

3.    Defendant Bluitt and Mederious's motions to join the other Defendants' motion for summary judgment are GRANTED, and the joinders are accepted. Dkts. 138; 140.

4.    Defendants' motion for summary judgment is GRANTED as to all claims against all Defendants (including claims for punitive damages).[3] Dkt. 108.

5.    All claims under California law are DISMISSED.

6.    The Clerk of the Court shall enter judgment, terminate all pending motions, and

---

[3] The Court's finding that Defendants are entitled to summary judgment as a matter of law on Plaintiff's claims obviates the need to address these Defendants' alternative argument regarding an entitlement to qualified immunity.

1    close the file.

2         7.      This Order terminates Docket Nos. 108, 125-3, 125-4, and 134.

3         IT IS SO ORDERED.

4    Dated: March 31, 2015                    _____

5                                             YVONNE GONZALEZ ROGERS
                                              United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California